The next case is En Re Application and Petition of Guo. I just want to wait a few moments to let the courtroom clear. Thank you, Your Honour, and may it please the Court. Renita Sharma for Appellant Hanwei Guo. This appeal presents the question of whether the China International Economic and Trade Arbitration Commission, which I'll refer to as CTAC, is a foreign or international tribunal under Section 1782, this Court's decision in National Broadcasting Code v. Bear Stearns, and the Supreme Court's later decision in Intel Corp. We respectfully submit that the arbitration initiated by Mr. Guo before CTAC is pending before a foreign or international tribunal, and therefore the District Court's memorandum opinion denying Mr. Guo's application for the production of documents should be reversed and remanded. The first issue for this Court to consider is whether this panel may overrule a prior decision of the Court, in this case NBC. Before I address the application of the standard, let me address the standard itself. The standard quoted in appellant's briefs is from a 2014 Second Circuit case, Lotz Coe v. Hanhai Precision. It is that where there has been an intervening Supreme Court decision that casts doubt on our controlling precedent, one panel of this Court may overrule a prior decision. The appellants refer to a different case, a 2016 case, Dosher v. Seaport Group, in arguing that Intel does not qualify as an intervening decision. It's worth noting that Dosher affirmed this standard in Lotz, that a panel may overrule if an intervening decision is cast out. Therefore there actually is no disagreement between the parties here about the standard the Second Circuit should apply. Either way, it's a pretty demanding standard, so why don't you tell us how Intel undermined our earlier authority. Sure. Intel cast doubt on NBC's interpretation of the term tribunal in four different ways. First, Intel directly quotes authority which defines tribunal to include arbitral tribunals. That authority was an article written by what the Supreme Court, the person the Supreme Court has called the principal drafter of Section 1782, Professor Hans Schmidt. That straightforwardly cast doubt on the holding in NBC. In opposing that argument, appellees claim that this is merely a two-word snippet that this Court should not place undue weight on. It's worth noting that this Court has relied upon parenthetical citations of the Supreme Court before in exactly this case, in exactly this article. In Intel, the Supreme Court relied upon another portion of Professor Schmidt's article to support its conclusion about whether a proceeding needed to be pending when an application for discovery was made. The Supreme Court quoted a parenthetical stating that it was not necessary for the adjudicated proceeding to be pending at the time the evidence was sought. That quotation comes directly from the same article by Professor Schmidt. In Mies v. Buder, which was a Second Circuit opinion 11 years after Intel, this Court accepted that by citing that parenthetical, Intel had adopted its reasoning. And as such, the Second Circuit stated that Intel explained that it was not necessary for the adjudicative proceeding to be pending, directly quoting the parenthetical that had been quoted in Intel. That same logic applies here. By quoting a portion of the article as supported, as support for its argument, the Supreme Court has indicated that it adopts the logic and that cast doubt on this Court's contradictory case law. However, it's not that the Supreme Court has indicated that it adopts the logic and that cast doubt on this Court's contradictory case law. My next point, which is that it's not necessary that this Court reach to the decision based solely on the parenthetical. If this Court does not — is not comfortable that that was a holding, this Court should also look at the entirety of the reasoning set forth in Intel. And that reasoning similarly cast doubt on — on the holding in NBC. And the first way it does so is that the Supreme Court instructs that the interpretation of 1782 should be based on the plain meaning of the statute. The Court instructs that — that categorical limitations should not be placed on Section 1782. And the reason is that the Court states that if Congress had intended to impose a sweeping restriction on the language it used in the statute, it would have included statutory language to that effect. The Second Circuit acknowledged this imperative in another case about Section 1782, Mies Supreme Court have declined to read into Section 1782 requirements that are not rooted in this text. So is — your argument is that this — the foreign or international tribunal is plain on its face? Yes, Your Honor. That it unambiguously includes private arbitration tribunals? Yes, Your Honor. And in part, that's based on the finding in NBC itself. NBC itself held that foreign or arbitral tribunals is broad enough to include both state-sponsored and private tribunals. The Court went forward to say that that was not sufficient, that it then needed to consider legislative history to determine whether private arbitral tribunals must be included or were merely permitted to be included. It's that second step that we believe does not accord with the instructions in Intel. Intel stated that the statutory language was, to put it colloquially, the be-all and end-all of the Court's analysis of Section 1782. And the Sixth Circuit has recently affirmed that finding of Intel in a decision that came out late last year. In FedEx, the Sixth Circuit said, where the statutory language provides a clear answer as to Section 1782, our analysis begins or ends there. Now, beyond the plain meaning of the statute, the Court also looked at legislative history and public policy, and those are addressed in our briefs. But I'm mindful of my time, so I'll move on to the second argument made in our briefs for the basis for overturning the Court's decision, which is that even if NBC remains good law after Intel, the Court erred in finding that under NBC, CTAC was not a state-sponsored adjudicatory body. In the briefing, we identified five different reasons why the district court erred. I just want to focus on one of those for the purposes of this argument. It's judicial review. I point the Court towards two decisions both called in reclimer. One was the second SDNY decision, and one was the Northern District of Illinois decision, both analyzing proceedings before the London Maritime Arbitration Association. Both courts found that the LMAA was a foreign tribunal in part and based on the driving concern that that panel's decisions were reviewable under the English Arbitration Act. The Court said that there were three aspects of judicial review, that the English courts could challenge the basis of the tribunal's substantive jurisdiction, challenge an award on the basis of serious procedural irregularities, and challenge the award on a point of law. As is demonstrated by the expert opinion on Chinese law submitted to the district court, each of those three applies to CTAC arbitrations as well. CTAC arbitration can be overturned based on the lack of substantive jurisdiction, on serious procedural irregularities, or if the award is contrary to public interest. Therefore, if this Court does not reach the finding that NBC has been overruled, we would ask that it still overturn the district court's decision based on the fact that CTAC is a state-sponsored adjudicatory body. I'll reserve the remainder of my time here. Thank you. Thank you.   Thank you. Thank you. Thank you. May it please the Court, Frances Bivens of Davis, Polk & Wardwell, on behalf of the Tencent entities, which are the entities participating in the commercial arbitration that's pending in China, and before this Court, we are intervener appellees. I'll be arguing on behalf of both the respondent and the intervener appellees. To begin, I would just like to clarify that I don't think we have any disagreement with the appellant as to the standard that should be applied by the panel in considering whether to overrule NBC on the basis of the Intel decision. We don't think that there's any inconsistency between the two cases that were cited by the appellant, and we think that the standard is an inquiry into whether anything about Intel casts doubt upon the reasoning of the Court in NBC. And addressing each of the issues that were raised by the appellant, first of all, we think it's very clear that Intel does not cast doubt on NBC. The Supreme Court in Intel did not address the question of whether Congress intended 1782 to apply to commercial arbitration, and the parenthetical that appellant relies upon in arguing that Intel called into question the reasoning of NBC is itself not addressed to the question of whether Congress intended 1782 to apply to commercial arbitration. The quote is from an article by Professor And what the quote states is that in the author's opinion, 1782, Congress intended 1782 to apply to arbitral tribunals, but did not take on the question of whether that Congress intended it to apply to commercial private arbitral tribunals as opposed to arbitral tribunals established by a government or on the basis of an intergovernmental agreement. Go ahead. So your argument is that it's not that the quote here wasn't speaking to the issue for which it's being cited now, not that it's buried in a string site in a parenthetical, which I thought was part of the gist of your argument as well. Well, I think it could be both things. In other words, it's clearly dicta. It's not the holding of the case. But it's obviously the law of this circuit that under Dozier that the circuit can consider dicta under certain circumstances. Our position here is that this is dicta. It's dicta that doesn't go even to address the question that's before the Court here, let alone the question that was before the Court in Intel. But also that it's not a circumstance where you have a reasoned and considered issue that would call into question something like NBC. And so we think there could be circumstances where dicta could be the basis for the Second Circuit to overrule a prior opinion. But here, where not only does the dicta not address the issue that's before the Court right now, it was something that appeared in a parenthetical and was not part of a considered or reasoned analysis. The broader argument appears to be that Intel expresses a philosophy of giving full scope to the language of 1782 in providing this discovery in order to promote the underlying policies of obtaining assistance for our own courts. So could you speak to that moving beyond the parenthetical? Sure. Well, what's interesting, the Sixth Circuit made that point precisely in their decision. And what's interesting is if you look at the analysis in NBC and then compare it to the Court's analysis in Intel, the two courts are actually applying the very same standard. In NBC, this Court first looked at the plain meaning of 1782, looked to dictionaries and other legal sources for definitions of the term tribunal, found positions or definitions on both sides of the issue, and on that basis found that the term tribunal was ambiguous, therefore making it appropriate to look at the legislative history of the statute at that point. In Intel, the Supreme Court similarly starts with the proposition that the plain language of the statute should prevail. They actually articulated that standard in a portion of the decision that was was actually an interested party and found that the term interested party did have a plain language definition that could be applied by the Court, and they did so to find that the complainant qualified as an interested party. The Court then turned to the term tribunal and immediately looked to the legislative history and, in fact, to the very same Senate report that this Court looked to in NBC. And while there isn't a statement by the Supreme Court at that point that they found the term tribunal to be ambiguous, the fact that the Supreme Court looked to the legislative history implies that finding. And so, in fact, the analysis and the statutory interpretation that was done by the Court in Intel is analogous or almost identical to the analysis that was done by the Court in NBC, and there's certainly nothing about that approach that calls into question the analysis of the Court here in NBC. So we don't think that there's any basis for this Court to go back and revisit the holding. It's worth noting that the reasoning of the Court in NBC was persuasive at the time and remains persuasive after Intel. The Court focused on the fact that if 1782 is read to apply to foreign commercial arbitrations, that would have meant at that time in 1964 a dramatic change in public policy on behalf of the United States. The United States at that time only had discovery was and still to this day is only available in the context of private arbitrations as a result of the 1947 FAA. Section 7 of the Federal Arbitration Act allows for the purposes of domestic arbitration a very limited type of discovery. The parties are not given subpoena power. The tribunal members are the ones who can issue the subpoena and only under very limited circumstances associated with a hearing. And with that backdrop, what the Court found in NBC was that if there were going to be a change in public policy that would be so dramatic to allow for the parties to a United States and have discovery rights that were greater than those available to the parties in a domestic arbitration, the Court would have expected some mention of that in the congressional record and that a change of that type would not happen without mention by Congress. And the Court, in fact, found that it would be inappropriate to read a broad term, an ambiguous term like tribunal, in such a way that would effectuate a public policy change of that kind in a circumstance where there was no indication that Congress intended a change in public policy of that nature. As to the issue of whether CTAC is a private or public institution under the meaning of NBC, Judge Furman in footnote 1 of his decision makes a useful observation, which is that the salient inquiry is very likely the appropriate inquiry here should be whether the arbitral tribunal that has been convened to decide this commercial arbitration is a tribunal that falls within the definition of a private tribunal under NBC. And here, the authority of the arbitral tribunal that has been convened to decide this case derives entirely from a private commercial agreement between the parties. There is no governmental authority that comes into play with respect to the authority of the tribunal. And the argument of the appellant that the presence of a supervisory statutory scheme that allows for or recognizes the private arbitration would take every private arbitration in every country in the world and convert it into some kind of a public or governmental arbitration. Roberts. Yes. That kind of asks the question, though, what does tribunal mean? Is it the body that's established by the organization, or is it the organization itself? Isn't that the question? So I think that is a good question. I would argue that it doesn't matter here, because here, in both instances, both the tribunal itself, which is — has authority that derives entirely from a private contract, is of a private nature under NBC. I also think that Judge Furman made factual findings about the nature of CTAC, which is the supervisory institution, and found that while CTAC had been created in 1954 by the Chinese government, that today it is a nongovernmental entity that acts independently of the Chinese government. So even if you look at the supervisory institution in this case, it is also of a private nature. So I don't think the Court has to reach the question of whether it's the tribunal itself or whether it's the supervisory arbitral institution that needs to be analyzed. Your Honors, I'll just address one point that came up on Apelli's argument. She made the point that the process engaged in by NBC and by Intel was the same. But I think the important thing for this Court, in considering whether Intel cast out, is the fact that the burden placed upon statutory interpretation in Intel and in Intel, the Court stated that congressional intent to expand the scope of Section 1782's reach can be interpreted from Congress's failure to include limiting language in the statute. NBC took exactly the opposite approach. The Court and NBC acknowledged that the legislative history showed that Congress intended to broaden the scope of the statute, but reviewed the legislative history and found that the failure to explicitly mention private arbitrations meant that Congress did not intend to expand the scope to that extent. They're directly opposing burdens. The process is the same, but Intel says the Court should only find that Congress intended to limit a fair construction where Congress says so. NBC says the term should only be given its common usage if Congress tells us it should. That method has been reversed by Intel, and therefore, the fact that the process was the same, I don't think, excuses NBC from having doubt cast upon it by Intel. Thank you, Your Honours. Thank you both. We'll take it under advisement. Very nicely argued.